# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2025

Lyle W. Cayce
Clerk

_____

No. 24-30656

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Briani L. Doucet,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:21-CR-285-1

_____

Before Dennis, Graves, and Duncan, *Circuit Judges*.

Per Curiam:[*]

A federal grand jury indicted Briani Doucet for unlawfully possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Doucet moved to dismiss the indictment on the ground that § 922(g)(1) is unconstitutional. The district court denied the motion; Doucet entered a conditional plea of guilty; and this timely appeal followed. Because the Government has not carried its burden to show a history or tradition of

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

permanently disarming individuals guilty of attempted marijuana cultivation (Doucet's predicate felony offense), we REVERSE the district court's judgment and REMAND for further proceedings not inconsistent with this opinion.

I

On two separate occasions in August and September 2020, members of the Lafayette Police Department discovered a handgun while searching Doucet's vehicle after traffic stops. Doucet had previously pleaded guilty in 2016 to a Louisiana felony. *See* LA. REV. STAT. § 40:966. Although the parties agree on the nature of Doucet's conviction, the dissent expresses uncertainty about what the 2016 predicate offense actually was.

The presentence investigation report repeatedly designates Doucet's 2016 offense as the "attempted cultivation of marijuana." Doucet, however, pleaded guilty under a Louisiana statute that criminalizes those who "produce" or "manufacture" a controlled substance, as well as those who "distribute or dispense." *Id.* § 40:966(A)(1). Because this statute covers multiple drug crimes, the dissent resists describing the predicate felony as "attempted cultivation of marijuana," and instead posits—*sua sponte*—that Doucet may have pleaded guilty to a different offense, such as drug distribution. The Government does not advance this argument. Although it urges us to describe her offense as the "production" or "manufacturing" of marijuana, it concedes that Doucet was "charged under the 'production/manufacturing' language of the statute," not for distribution or dispensing.

The dissent's theory contravenes the principle of party presentation, which instructs courts to "rely on the parties to frame the issues for decision and assign to the courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("In our

2

adversarial system of adjudication, we follow the principle of party presentation."). It also conflicts with the district court's uncontested finding that "[r]ecords revealed that Briani L. Doucet was convicted on December 8, 2016, for Attempted Cultivation of Marijuana," as well as the Government's admission that Doucet's offense was limited to production/manufacturing. The dissent's concerns are therefore untethered to the arguments and record before us.

Consistent with Louisiana practice and the district court's finding, we use the term "attempted cultivation of marijuana" to describe Doucet's predicate offense. Louisiana courts commonly refer to attempted production/manufacturing as "attempted cultivation of marijuana." *State v. Hebert*, 2008–542, p.2 (La. App. 3 Cir. 11/5/08), 996 So.2d 688, 689. The terminology is interchangeable, and the choice between them does not affect our analysis. *See, e.g.*, LA. REV. STAT. § 40:989.1(C)(5) (defining "production" to include the "cultivation" of a controlled substance).

Because Doucet had a prior felony conviction and possessed a firearm, a federal grand jury indicted her with two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Doucet moved to dismiss the indictment. She argued that § 922(g)(1) violated the Second Amendment, both on its face and as applied to her under the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). The district court denied Doucet's motion, reasoning that it was "still bound by pre-*Bruen* Fifth Circuit precedent" upholding the constitutionality of § 922(g)(1).

Doucet entered a conditional plea agreement with the Government but preserved her right to appeal the denial of her motion to dismiss the indictment. The district court accepted the plea agreement, which dismissed one of her § 922(g)(1) counts, and sentenced her to thirty-two months of

imprisonment followed by three years of supervised release.[1] Doucet timely appealed.

Doucet concedes that her Second Amendment facial challenge is foreclosed and raises this issue only to preserve it for possible future review. *See United States v. Diaz*, 116 F.4th 458, 472 (5th Cir. 2024) (foreclosing facial challenge to § 922(g)(1)). Accordingly, we focus on whether § 922(g)(1) violates the Second Amendment as applied to Doucet, which we review de novo. *United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014) (citing *United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009)).

II

The Second Amendment guarantees that "the right of the people to keep and bear Arms[] shall not be infringed." U.S. CONST. amend. II. In *Bruen*, the Supreme Court established a two-step framework to analyze whether a particular firearm regulation violates the Second Amendment. 597 U.S. at 17. First, we look to whether the Second Amendment's plain text covers the conduct the Government seeks to regulate. *Id.* at 24. Then, if it does, the Government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 n.10 (1961)).

Because the plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1), *Diaz*, 116 F.4th at 467, the Government carries the

_____

[1] Doucet has served her term of imprisonment. But because Doucet is challenging her conviction, which can have adverse consequences, her appeal is not moot. *United States v. Hill*, No. 23-20244, 2025 WL 2542167, at *1 n.1 (5th Cir. Sept. 4, 2025) (citation omitted).

burden of proof to show that lifetime disarmament of Doucet for her predicate offense is "consistent with the Nation's historical tradition." *Bruen*, 597 U.S. at 24; *accord Diaz*, 116 F.4th at 467. To satisfy its burden, the Government must "identify a well-established and representative historical analogue" that is "relevantly similar" to § 922(g)(1) as applied to Doucet, but it need not provide its "historical twin." *Diaz*, 116 F.4th at 467.

The Government advances two sets of Founding-era analogues to support its contention that § 922(g)(1)'s lifetime disarmament for attempted cultivation of marijuana is consistent with our Nation's history and tradition: (A) severe punishment for those who produced or trafficked in contraband or illicit goods; and (B) disarmament for those who legislatures deem a "dangerous" threat to the safety of others.[2] We address and reject each theory in turn.

A

The Government first asserts that the attempted cultivation of marijuana is analogous to several crimes involving trafficking contraband or illicit goods—namely, knowing receipt of a stolen horse, mail theft, and counterfeiting—that were punishable in the Founding era with death and permanent forfeiture of an individual's estate.[3] But Fifth Circuit precedent forecloses this argument.

---

[2] The Government additionally argues that Doucet's conduct could support her conviction under 18 U.S.C. § 922(g)(3). But this is a § 922(g)(1) case, and we decline to justify Doucet's conviction based on a theory and statutory provision for which she was never charged or convicted. *See United States v. Greenlaw*, 84 F.4th 325, 358 (5th Cir. 2023) ("[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him." (citation omitted)), *cert. denied*, 144 S. Ct. 2518 (2024).

[3] Under *Diaz*, laws punishing serious crimes or estate forfeiture—in addition to express permanent disarmament—satisfy the "how" inquiry because those laws

No. 24-30656

In *United States v. Kimble*, we rejected the Government's appeal to those same Founding-era felonies as relevant historical analogues to modern laws prohibiting drug trafficking. 142 F.4th 308, 314 (5th Cir. 2025). Although recognizing that both "advance a common goal of eliminating traffic in illicit goods," we found the comparison to operate at too "high [a] level of generality" and "stretches the analogical reasoning prescribed by *Bruen* and *Rahimi* too far." *Id.* (citing *United States v. Connelly*, 117 F.4th 269, 282 (5th Cir. 2024)). Those Founding-era offenses—knowing receipt of a stolen horse, mail theft, and counterfeiting—"concern theft, fraud, or deceit," not the "use and sale of addictive drugs." *Id.* at 313. *Kimble* thus dictates that the Government's proffered analogues are not sufficiently similar to Doucet's attempted marijuana cultivation offense, which likewise targets the production of intoxicating substances rather than the trade in illicit goods more generally.

B

The Government next contends that lifetime disarmament of Doucet fits within the Nation's history and tradition of disarming those whose past criminal conduct demonstrates a special danger of misusing firearms. We disagree.

"The Second Amendment allows Congress to disarm . . . people it reasonably deems dangerous." *Id.* at 314–15. This capacity, however, is limited: Congress may do so only if "such a disarmament regime [is] consistent with *Bruen*'s 'why' and 'how' test." *Id.* at 315. Thus, the "shifting benchmark" of felony status does "not define the limits of the Second Amendment." *Diaz*, 116 F.4th at 469. Instead, we must determine if the

---

"achieved their goals by permanently punishing offenders, as does § 922(g)(1)." 116 F.4th at 469.

Government has "identified a 'class of persons at the Founding who were dangerous for reasons comparable to' those Congress seeks to disarm today." *Kimble*, 142 F.4th at 315 (quoting *Connelly*, 117 F.4th at 278); *see, e.g.*, *United States v. Rahimi*, 602 U.S. 680, 698 (2024) ("[Section 922(g)(8)'s] prohibition on the possession of firearms by those found by a court to present a threat to others fits neatly within the tradition the surety and going armed laws represent.").

But before assessing historical analogues, we must touch on a different question: by what means can the Government show the "dangerousness" of Doucet? We have offered inconsistent answers to this question post-*Bruen*. *See United States v. Mancilla*, 155 F.4th 449, 454 (5th Cir. 2025) (ELROD, C.J., concurring) ("Our caselaw in this area is developing very quickly by necessity, and it has sometimes done so in broad swathes[.]"). In *Kimble*, we applied a "[c]lass-wide" approach to disarmament, 142 F.4th at 315, and found the defendant's predicate drug trafficking offense to be categorically "an inherently dangerous activity," *id.* at 317. In doing so, we rejected the need for "an individualized assessment that [the defendant] is dangerous." *Id.* at 317–18; *see also Mancilla*, 155 F.4th at 452 (same). But in *United States v. Morgan*, we assessed the defendant's dangerousness based on the individual conduct underlying his predicate offense—a "vicious drive-by shooting"—rather than the categorical dangerousness of those convicted for illegal use of a weapon. 147 F.4th 522, 528 (5th Cir. 2025). And in *United States v. Reyes*, we determined that the defendant posed a "credible threat to the safety of others" based on the totality of his criminal history, including convictions that occurred after the § 922(g)(1) conduct that was the subject of his appeal. 141 F.4th 682, 686 (5th Cir. 2025).

We need not wade in such muddy waters here. Doucet's only felony conviction was for attempted marijuana cultivation in 2016, and the Government does not provide any evidence detailing the conduct underlying

her offense, much less any indication that it involved actual or threatened violence, victims, or weapons.[4] As a matter of circumstance then, our review is limited to a categorical assessment of the dangers of attempted marijuana cultivation, and the Government must therefore identify a class of persons at the Founding who were considered "dangerous" for reasons comparable to those convicted of Doucet's predicate offense.

\* \* \*

There are two strains of cases in which we have found that a predicate felony fit a defendant within the class of persons considered dangerous enough to warrant disarmament in the Founding era. The first includes offenses that expressly involve dangerous or violent acts. *See, e.g.*, *United States v. Schnur*, 132 F.4th 863, 870 (5th Cir. 2025) (holding that defendant's conviction for aggravated battery justified disarmament as a dangerous person); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per curiam) (same, but aggravated assault and manslaughter). Doucet's offense clearly does not fit in this category: the Government does not dispute that there is nothing dangerous or violent in attempting to grow a marijuana plant. *Cf. Connelly,* 117 F.4th at 278–79.

---

[4] The Government urges us to consider Doucet's misdemeanor offenses, arrest record, and other uncharged conduct. We cannot. *See, e.g.*, *Kimble*, 142 F.4th at 318 ("The relevant consideration is a defendant's 'prior convictions that are punishable by imprisonment for a term exceeding one year,' not unproven conduct charged contemporaneously with a defendant's [§ 922(g)(1)] indictment or prior conduct that did not result in a felony conviction." (quoting *Diaz*, 116 F.4th at 467)). We acknowledge persuasive concurrences and dissents advocating for a different rule. *See, e.g.*, *Mancilla*, 155 F.4th at 455–56 (GRAVES, J., dissenting); *Kimble*, 142 F.4th at 321 (GRAVES, J., concurring in part and in the judgment). Under our rule of orderliness, we are bound to apply the panel majority's holdings.

The second encompasses non-violent offenses that often lead to, or are associated with, acts of violence. For example, in *Kimble*, we held that Congress reasonably deemed felon drug traffickers categorically "too dangerous to trust with weapons," consistent with Founding-era laws excluding "dangerous persons" who "threatened violence and the risk of public injury," because drug trafficking is "an inherently dangerous activity." 316 F.4th at 316 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting)). The Government anchors its position in this second strain.

But we have found the dangerous persons analogue to be inappropriate where an act is non-violent and fails to indicate a sufficient connection to violence. In *United States v. Connelly*, we rejected the Government's argument that non-violent marijuana users fit within a class of persons considered to be "dangerous" at the Founding in the context of § 922(g)(3). 117 F.4th at 278. Because "not all members of the set 'drug users' are violent"—and the Government had not shown how "marijuana use predisposed" an individual to "armed conflict"—we concluded that marijuana use did not justify disarmament. *Id.* at 278–79; *see also United States v. Daniels*, 124 F.4th 967, 976 (5th Cir. 2025) ("Analogies to historical [disarmament] laws . . . will likely find stronger footing if the government can establish a connection between defendant's active or regular drug use and violent or dangerous conduct.").

Applying these precepts here, the Government fails to show that Doucet's offense is comparable to a class of persons at the Founding who were considered "dangerous." *Kimble* makes clear courts can infer the dangerousness of drug traffickers only because of the "*inherent violence* of the trade." 142 F.4th at 316 (quoting *United States v. Yanez Sosa*, 513 F.3d 194, 202 (5th Cir. 2008)). Even though "drug dealing" alone is "not necessarily violent," it is "dangerous" because it "often lead[s] to violence." *Folajtar v.*

*Att'y Gen. of the United States*, 980 F.3d 897, 922 (3d Cir. 2020) (BIBAS, J., dissenting). *Kimble* therefore held that *all* drug-trafficking offenses warrant disarmament, including non-violent ones, because the business itself is categorically dangerous: violence is likely to emerge in the illicit transactions of an illegal and clandestine industry. 142 F.4th at 316; *see also Harmelin v. Michigan*, 501 U.S. 957, 1002–03 (KENNEDY, J., concurring in part) (discussing how the "nexus between illegal drugs and crimes of violence" arises from "drug business or culture" and users seeking "to obtain money to buy drugs").

The Government fails to show how this rationale applies to individuals convicted of attempted marijuana cultivation. This offense—unlike drug-trafficking crimes—does not necessarily signify involvement in the drug trade: individuals often cultivate marijuana for personal use, not illicit profit. *See, e.g.*, MO. CONST. art. XIV § 2.10(1)(b) (legalizing cultivation of up to six flowering marijuana plants for registered, non-commercial use); OKLA. STAT. ANN. 63 § 420 (legalizing cultivation of up to six marijuana plants for personal use by licensed medical marijuana patients). Nor are convictions limited in practice to violent offenders or those involved in trafficking: Louisiana prosecutes and convicts individuals for attempted cultivation of marijuana regardless of whether they grew the plants for sale or personal use. *See, e.g.*, *State v. Broadway,* 40-569, p. 2 (La. App. 2 Cir. 1/25/06), 920 So.2d 960, 961 (affirming seven-and-a-half-year sentence for attempted cultivation of marijuana after discovery of "one marijuana plant" in a five-gallon bucket near defendant's trailer); *State v. Insley,* 2004-1006, p. 2–3 (La. App. 3 Cir. 2/2/05); 893 So.2d 209, 211–12 (affirming four-year sentence for attempted cultivation of "five marijuana plants" even though "the plants were grown" for wheelchair-bound defendant's "own personal use").

What's more, the Government fails to identify any class of persons at the Founding deemed "dangerous" for reasons comparable to marijuana producers.[5] Because there was "very little regulation of drugs (related to firearm possession or otherwise until the late 19th century)," we have previously looked to Founding-era regulations of alcohol as the "next-closest 'historical analogue'" for the historical treatment of intoxicating substances. *Connelly*, 117 F.4th at 279. We do the same here.

In *Connelly*, we found that although several Founding-era laws narrowly prohibited the use of firearms while a person was actively intoxicated, there was no relevant "Founding-era tradition or regulation disarming ordinary citizens who consumed alcohol." *Id.* at 281. Likewise, the Government fails to identify any laws treating the illegal production or manufacturing of alcohol as dangerous or worthy of disarmament. Congress punished illegal distilling in early America only with a fine of "one hundred dollars" and the forfeiture of "all the spirits which he or she shall keep therein," not disarmament. Act of Mar. 3, 1791, ch. 15 § 25, 1 STAT. 199; *see also* Sarah Brady Siff, *Burn, Sell, or Drive: Forfeiture in the History of Drug Law Enforcement*, 80 OHIO ST. L.J. 859, 861–62 (2019) (discussing the punishment of asset forfeiture in early America). The Government has not carried its burden to show that lifetime disarmament of Doucet fits within the

---

[5] Indeed, the Government fails to address Doucet's assertion that even "the Founders grew hemp"—the same species botanically as marijuana. *United States v. Daniels*, 77 F.4th 337, 343 (5th Cir. 2023) (citing THOMAS PAINE, *Common Sense (1776)*, *in* 1 THE POLITICAL WRITINGS OF THOMAS PAINE 15, 52 (Charlestown, George Davidson 1824)); *vacated*, 144 S. Ct. 2707 (2024); *see also* Letter from Thomas Jefferson to George Fleming (Dec. 29, 1815), *reprinted by* NAT'L ARCHIVES: FOUNDERS ONLINE, https://perma.cc/P5H8-KAL6 (describing mechanical invention to ease the work of the "the cultivaters [sic] of hemp," which beneficially "is abundantly productive and will grow for ever [sic] on the same spot").

No. 24-30656

Nation's history and tradition of disarming individuals whose past criminal conduct demonstrates a special danger of misusing firearms.

*

In sum, on this record, the Government's two proposed analogues—severe historical punishments for producers or traffickers of contraband and the disarmament of those legislatively labeled "dangerous"—do not justify § 922(g)(1)'s lifetime disarmament for attempted marijuana cultivation. Neither analogue satisfies the Government's burden under *Bruen*.

III

For the foregoing reasons, we REVERSE the district court's judgment and REMAND for further proceedings not inconsistent with this opinion.

No. 24-30656

STUART KYLE DUNCAN, *Circuit Judge*, dissenting:

The majority concludes that applying 18 U.S.C. § 922(g)(1) to Briani Doucet violates the Second Amendment. Its premise is that Doucet's predicate felony was merely for "attempted marijuana cultivation," a mantra the majority repeats seventeen times. *See* Op. at 2, 3, 5, 6, 8, 10, 12. I disagree for two reasons.

First, the statute under which Doucet pled guilty encompasses criminal activity far more serious than "attempted marijuana cultivation." Start with the title: "Penalty for distribution or possession with intent to distribute narcotic drugs listed in Schedule I; possession of marijuana, synthetic cannabinoids, and heroin." LA. REV. STAT. § 40:966. The statute itself never mentions "cultivation" of marijuana (or "attempted cultivation," whatever that means). Instead, it outlaws the following:

> (1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule I.
>
> (2) To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance classified in Schedule I.
>
> (3)(a) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense a consumable hemp product, as defined in R.S. 3:1481, in violation of R.S. 3:1483.

*Id.* § 40:966(A)(1)–(3)(a).

So, simply put, the statute criminalizes producing, manufacturing, distributing, or dispensing Schedule I controlled dangerous substances and

13

their analogues.[1] Those prohibited activities strongly resemble an activity—drug trafficking—which we have held "inherently dangerous" for Second Amendment purposes. *See United States v. Kimble*, 142 F.4th 308, 317 (5th Cir. 2025) ("[T]he Legislative, Executive, and Judicial Branches agree that drug trafficking is an inherently dangerous activity, and Congress has responded to that threat by disarming convicted drug traffickers via § 922(g)(1).").

Second, the information we have about Doucet's crime suggests, again, that it was quite a bit worse than "attempted marijuana cultivation." Here are the details from her Presentence Investigation Report:

| 39. | 05/11/2016 (Age 19) | Attempted Cultivation/ Manufacturing Marijuana/15th Judicial District Court; Lafayette Parish, Lafayette, LA; Docket No.: 156925 | 12/08/2016: Sentenced to serve 2 years Hard Labor, suspended, 2 years supervised probation.<br><br>Probation began: 12/08/2016. Probation Revoked: 07/12/2017: Sentence to serve original sentence. 11/01/2017: Parole began. 08/29/2018: Parole terminated early. | 4A1.1(a) | 3 |

The defendant was represented by counsel. According to the Bill of Information filed in this matter, Count One: on or about April 27, 2016, Briani Lashea Doucet, did willfully, unlawfully, knowingly and intentionally produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute or dispense, a controlled dangerous substance, to-wit: Marijuana, classified in Schedule I of the Uniform Controlled Dangerous Substance Act, in violation of the provisions of R.S. 40:966;

To be sure, the PSR uses the phrase "Attempted Cultivation/Manufacturing Marijuana" as a generic description of Doucet's

---

[1] The statute also criminalizes unauthorized possession of those substances, LA. REV. STAT. § 40:966(C), but that subsection is not relevant to Doucet's criminal history, as her PSR shows. *See infra*.

criminal activity. But the PSR goes on to specify that Doucet intentionally "produce[d], manufacture[d], distribute[d], or dispense[d]" (or possessed with such intent) "a controlled dangerous substance, to-wit: Marijuana."

As the majority concedes, Op. at 8, that is all we know about Doucet's predicate felony. So, I am at a loss to understand how the majority somehow intuits that Doucet's crime did not "involve[] actual or threatened violence, victims, or weapons," *ibid.*, that Doucet was simply attempting to grow a marijuana plant for personal use, *id.* at 10, or that Doucet was, like the founders, perhaps only attempting to produce hemp, *id.* at 11 n.5.

All of that is speculation. What the record actually tells us is that Doucet pled guilty under a statute that criminalizes producing, manufacturing, distributing, or dispensing Schedule I controlled dangerous substances. Consequently, there is no basis for equating her predicate felony with mere marijuana use or possession. *Cf.* Op. at 9 (discussing *United States v. Connelly*, 117 F.4th 269, 278–79 (5th Cir. 2024)).

Because I would uphold Doucet's § 922(g)(1) conviction, I respectfully dissent.